IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JIM D. NEWELL,

    Plaintiff,

 v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

    Defendant.
_____

Civ. No. 05-6134-AA

OPINION AND ORDER

Kathryn Tassinari
Robert Baron
Cram, Harder, Wells & Baron, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401
(541) 686-1969
 Attorneys for plaintiff

Karin J. Immergut
United States Attorney
Neil J. Evans
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, Oregon 97204
(503) 727-1053

1 - OPINION AND ORDER

Jeffrey Baird
Special Assistant United States Attorney
Social Security Administration
701 Fifth Ave, Suite 2900 M/S 901
Seattle, Washington 98104
(206) 615-2205
    Attorneys for defendant

AIKEN, Judge:

Plaintiff Jim D. Newell brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act (the Act). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383©)(3). The Commissioner's decision is reversed and remanded for award of benefits.

## BACKGROUND

In 1999, plaintiff's prior applications for benefits were denied initially and on reconsideration, and plaintiff did not seek further appeals. Tr. 669-79. Plaintiff reapplied for DIB on March 9, 2001 and for SSI on February 16, 2001, alleging disability as of 1998. Tr. 155-57, 680-83. After plaintiff's applications were denied initially and on reconsideration, plaintiff timely requested a hearing before an administrative law judge (ALJ). Tr. 60-70, 685-92. On December 8, 2003, plaintiff, a treating physician, and a vocational expert appeared and testified before the ALJ. Tr. 792-854. On March 26, 2004, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 17-29. The ALJ declined to reopen plaintiff's 1999 applications and found that plaintiff's insured status expired on December 31, 2002 for purposes of DIB. Tr. 21. On March 11, 2005, the Appeals Council denied review, rendering the ALJ's decision the final agency decision. Tr. 9-16. Plaintiff now seeks judicial review.

Plaintiff was forty-four years old at the time of the hearing, with an eleventh-grade education and past work experience as a roofer, landscaper, janitor and inventory laborer. Tr. 155, 169, 828. Plaintiff alleges disability due to degenerative changes in his knee, ankle and spine, including facet arthropathy and foraminal stenosis with herniation, as well as a pain disorder, major depression, a developmental reading disorder and a personality disorder. Plaintiff alleges that he became unable to work in late 1998 due to recurring knee, shoulder, and back problems.

## **DISABILITY ANALYSIS**

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" during the period of alleged disability. Tr. 22; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the ALJ found that plaintiff has had medically determinable severe impairments since 1999. Tr. 22; 20 C.F.R. §§ 404.1520(c), 416.920(c). Specifically, the ALJ found that plaintiff has a combination of: mild diffuse degenerative lumbar spine changes; facet arthropathy on the left side at L5-S1 and minimal L3-4 foraminal stenosis due to minimal herniation; an old mild compression fracture at T12, without herniation or stenosis of the cord; minimal narrowing of the

medial compartment and degenerative changes of the right knee; and post-traumatic degenerative changes of the right ankle. Tr. 22. The ALJ noted that "physicians have imposed more than minimal work-related restrictions on the claimant due to his impairments, which under the regulations are medically determinable severe ones." Tr. 22. However, at step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 23; 20 C.F.R. §§ 404.1520(d), 416.920(d).

At step four, the Commissioner assesses the claimant's residual functional capacity (RFC) to determine whether the claimant can perform relevant past work. The Commissioner must assess the sustained work-related activities the claimant can perform on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945. The ALJ found that plaintiff retained the RFC to perform sedentary work with no lifting over the shoulder; hourly opportunities to briefly change from a sitting position; no climbing on ropes, ladder, or scaffolds; and no performing complex tasks. Tr. 28, 847. Thus, the ALJ found that plaintiff could not perform his past work, and the inquiry proceeded to step five. Tr. 27.

At step five, the burden shifts to the Commissioner to demonstrate that there are a significant number of jobs in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experience. *Yuckert*, 482 U.S. at 141-142; *Tackett v. Apfel*, 180 F.3d 1094, 1098-89 (9th Cir. 1999); 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2). If the Commissioner meets this burden, the claimant is not disabled. 20 CFR §§ 404.1566, 416.966. Relying on the testimony of the vocational expert (VE), the ALJ found that plaintiff could perform other work existing in significant numbers in the national economy, including touch-up screener circuit board, mounter in photo finishing, and food-beverage clerk. Tr. 847. Accordingly, the ALJ found plaintiff not

disabled within the meaning of the Act. Tr. 28.

Plaintiff challenges the ALJ's evaluation of the evidence regarding his RFC and his ability to perform other work at steps four and five of the sequential process.

## STANDARD FOR REVIEW

The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Id, Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

## DISCUSSION

Plaintiff asserts that the ALJ failed to accurately assess his RFC, because she improperly discredited plaintiff's testimony and failed to credit or investigate the medical source statements of a treating specialist, Dr. Kosek, and rejected the medical source statements of Dr. Lechnyr, an examining psychologist. Plaintiff further asserts that the Commissioner did not meet her burden of proving that he retains the ability to perform other work in the national economy.

I. **Medical Background**

In 1995, plaintiff injured his right knee at work and had two subsequent knee surgeries. Tr. 154, 251. In 1996, he injured his right shoulder at work and underwent a series of treatments and surgery on the shoulder. Tr. 111, 270. Plaintiff's medical records indicate he was treated for back pain in 1997 and 1998 with analgesics, muscle relaxants, and pain medications. Tr. 343, 344, 341. He was also treated for severe headaches beginning in 1998. Tr. 339. An MRI of the thoracic spine in July 1999 revealed a mild compression fracture and mild degenerative changes of the disc spaces. Tr. 440. Over the next four years, plaintiff was treated for joint problems in his right ankle which had been fractured in an accident, both shoulders, right knee and ongoing back problems. Tr. 331, 344, 352, 353, 365, 378, 381-88, 424-429, 430, 458, 491, 502, 504, 508. Plaintiff was compliant with prescribed drug and physical therapy treatments. Tr. 373, 381, 808.

In 1999, plaintiff began seeing Dr. Laurie, a primary care physician, for back pain. Tr. 358. Dr. Laurie referred him to Dr. Keiper, a neurosurgeon, who examined plaintiff in January 2000. Dr. Keiper found that plaintiff's MRI showed right sided disc bulges which could be irritating the nerve roots and noted that plaintiff had chronic pain from the fracture and also nerve pain from the disc bulges. Tr. 606-608. Dr. Keiper did not believe that surgery was an option and referred plaintiff to Dr. Kosek, a physician specializing in pain management, for steroid injections. Tr. 353, 608.

In April 2000, Dr. Kosek prescribed a trial of epidural steroid injections, hydrocodone, and noted complaints of depression. Tr. 386-388. Dr. Kosek continued regular treatment of plaintiff and also arranged for epidural steroid injections with Dr. Dunn. Tr. 381, 383, 384, 420. In September 2000, Dr. Kosek recommended facet blocks when plaintiff reported no decrease in pain despite compliance with physical therapy and narcotics. Tr. 381. Dr. Kosek also recommended continuation

of hydrocodone. *Id*. In November 2000, Dr. Kosek switched plaintiff to methadone. Tr. 378.

Dr. Kosek a wrote a letter to the state agency stating that plaintiff was disabled in November, 2000. Tr.380. The state agency disability report notes that plaintiff has a significant disc degeneration around the old T12 fracture; walked with a noticeable limp; had a significantly shorter right leg; and ankle, knee and shoulder issues that limited him to sedentary work, but plaintiff was deemed not disabled. Tr. 369, 371, 390. Dr. Kosek's opinion of disability was provided, but the agency noted that Dr. Kosek did not state functional limitations. Tr.390.

Plaintiff continued taking methadone and vicodin for pain. Tr. 376; 366; 429. In July 2001, Dr. Kosek increased his methadone level, continued the vicodin and analgesics, and discussed the need for psychological care. Tr. 373-75. In May 2001, plaintiff fell on his left shoulder and began treatment with Dr. Matteri, an orthopedic surgeon who recommended surgery. Plaintiff decided against surgery in favor of nonsurgical treatment and steroid injections. Tr. 426, 429.

In November 2001, Dr. Kosek noted only slow improvement of plaintiff's back pain and that plaintiff had a drug-related rash and changed his vicodin prescription to percoset. Tr. 464. Dr. Kosek noted excellent compliance with narcotics. Tr. 462. Plaintiff continued taking the methadone and percoset through 2003. Tr. 458, 455, 511, 452, 449, 502, 493, 552, 610, 657. In early 2003, plaintiff had another MRI on his right knee which indicated possible residual/recurrent tearing of meniscus and medial compartmental arthritis which is progressive. Tr. 442. Dr. Laurie continued to treat plaintiff with injections of steroids into the right knee and left shoulder. Tr. 424, 502, 504.

In 2002 and 2003, plaintiff experienced additional health problems, including a fracture of the right hand, right ankle injury, recurrent severe headaches and a hospitalization for a GI bleed with a diagnosis of duodenitits, ulcers and anemia. Tr. 469, 474, 491, 500, 582-590. In September 2003,

Dr. Laurie prescribed zoloft for depression and referred plaintiff to a neurosurgeon, Dr. Kikkino. Tr. 663. Dr. Kikkino reviewed a 2003 MRI and noted facet arthropathy at L5-SI, minor disc bulges, L3-4 foraminal stenosis that may produce symptoms in his left thigh, and left facet syndrome. Dr. Kikkino recommended selective nerve blocks. Tr. 612. Dr. Laurie wrote a letter to plaintiff's insurance company requesting coverage for the nerve blocks, and noted that if the coverage was denied, he would have to increase plaintiff's methadone prescription. Tr. 657.

In November 2003, after two years of steroid injections into his left shoulder, plaintiff underwent surgery for rotator cuff tear and bone spur. Tr. 638-651.

Following the administrative hearing on December 8, 2003, plaintiff was examined by a clinical medical psychologist, Dr. Lechnyr, who specializes in pain issues.[1] Dr. Lechnyr conducted a CARB test that indicated no malingering, consistent with the statements of plaintiff's treating physicians. Tr. 622. Dr. Lechnyr also performed an MMPI-2 and other tests during his examination of plaintiff. Tr. 622-627. Dr. Lechnyr diagnosed a major depressive disorder, recurrent moderate to severe, pain disorder, schizoid personality disorder, and developmental reading disorder.

Dr. Lechnyr also completed a Mental Residual Function Capacity and assessed plaintiff's mental limitations. Dr. Lechnyr found plaintiff markedly limited in his ability to: 1) maintain attention and concentration for extended periods; 2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and 3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 631-32.

---

[1]Plaintiff's attorney contacted the state agency regarding a psychological exam and the agency agreed to order the exam and agreed with the choice of expert. The state agency paid for this examination. Tr. 82.

## II. Credibility Assessment

Plaintiff asserts that the ALJ failed to give clear and convincing reasons for rejecting his testimony regarding pain. The ALJ must assess the credibility of the claimant regarding the severity of symptoms if a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986). Plaintiff has established the existence of impairments that could produce pain, and there are no assertions of malingering.

When making a credibility evaluation, the ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties in a position to have personal knowledge about the claimant's functional limitations. *Id.* In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other statements by the claimant that appear to be less than candid. *Id.* If the ALJ rejects the claimants testimony regarding the severity of the symptoms, the ALJ must provide clear and convincing reasons for doing so. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ found plaintiff not credible because of an apparent discrepancy between the plaintiff's assertion of disability at the end 1998 and a notation in a September 1999 report from Dr. Kitchell, an examining orthopedic surgeon, to plaintiff's primary physician at the time, Dr Byfield.

Under the social history part of Dr. Kitchell's report, it states, "smokes a pack a day, drinks socially, works as a roofer." Tr. 431. The Commissioner asserts that the ALJ is entitled as a matter of law to make a reasonable inference that plaintiff was working at that time despite his allegations of disability.

However, a decision "cannot be affirmed simply by isolating a quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Rather, the ALJ must consider the record as a whole. *Id.* (citing *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986)). Aside from this one ambiguous notation, no evidence of record indicates that plaintiff was employed at this time. The state agency, in its DISCO DIB report, records no earnings for 1999. Tr. 166. Further, the ALJ had the opportunity to clarify the record and ask plaintiff at the hearing whether he was working during this time period but did not. Moreover, Dr. Kitchell's report indicates that plaintiff was referred from his physician because of ongoing thoracic and midback pain, and that plaintiff had difficulty rising from a chair and had a slow gait. Tr. 167. An ALJ cannot search the record to find an inconsistency and ignore competent evidence that suggests the opposite conclusion. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984); *Holohan v. Massanari*, 246 F.3d 1195, 1204-05 (9th Cir. 2001).

The ALJ also found plaintiff not credible because he did not see an orthopedist from November 1999 until June, 2001 and "did not see primary physician Dr. Laurie from March 10, 2000 to May 7, 2001" but nevertheless "claimed, on April 27, 2001, of having too much back pain to get his children to school or do housework and have hobbies." Tr. 26. However, the record establishes that plaintiff was receiving treatment at this time. Specifically, the medical records show that plaintiff began seeing Dr. Laurie in the fall of 1999, and that Dr. Laurie referred plaintiff to a

10 - OPINION AND ORDER

neurosurgeon in late 1999. Tr. 358. The neurosurgeon, Dr. Keiper, found that plaintiff's MRI indicated the underlying causes for chronic back pain and nerve pain. Tr. 606-08. He referred plaintiff to a physician specializing in pain, Dr. Kosek, who began treating plaintiff in April 2000 and continued treating him through the fall of 2002. Tr. 353, 608. Dr. Kosek treated him with significant pain medications, including methadone, and epidural injections during this period. Tr. 381, 383-84, 386-88, 420. Plaintiff's statements of April 27, 2001, referred to by the ALJ, are consistent with his medical record.

The ALJ also found that "a lay report describing the claimant able to prepare meals, properly supervise and parent three children, care for a pet and responsibly handle finances, play cards, use the internet daily and visit or telephone friends or family daily is accepted as more accurate" than plaintiff's statements. Tr. 26. However, the report cited by the ALJ, prepared by plaintiff's mother, describes numerous limitations on plaintiff's activities. For example, plaintiff's mother reported that plaintiff can prepare meals if he sits on a stool; that his friends and families visit every one or two weeks; that he takes one or two naps a day to rest; plays cards once a month; that he does not take walks; and that he is unable to do household chores because of his back pain. Tr. 182-190.

The Ninth Circuit has consistently recognized that engaging in limited physical activities does not constitute a basis for discrediting a claimant's testimony as to disability. *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (physical therapy, home exercise, grocery shopping with assistance, walking, socializing, playing cards, swimming, watching television and reading, "because they did not consume a substantial part of her day, were insufficient as a basis for rejecting her testimony"). "Many home activities may not be easily transferable to a work environment, where it might not be possible to rest periodically, or take medication." *Smolen*, 80 F.3d at 1287 n.7 (citing

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Given the record as a whole, plaintiff's limited ability to carry out some activities during the day is not a legally sufficient reason to reject his subjective pain testimony.

### III. Medical Source Statements

Plaintiff asserts that the ALJ failed to state any reason for ignoring the opinion Dr. Kosek, the physician who treated plaintiff for pain management. He further asserts that the ALJ failed to give clear and convincing reasons for rejecting the opinion of Dr. Lechnyr, the examining psychologist.

#### A. Dr. Kosek

Dr. Kosek began treating plaintiff in April, 2000, after a referral from Dr. Keiper, an examining neurologist. In January 2000, Dr. Keiper found abnormalities on an MRI and diagnosed chronic back pain and nerve pain that could not be corrected by surgery and required pain management. Tr. 608. Dr. Kosek treated plaintiff on a regular basis through the fall of 2002, and this treatment period includes the time during which disability must be established for DIB. Dr. Kosek prescribed ongoing pain medication during this period, including hydrocodone, methadone, vicodin, percoset, and epidural steroid injections. In November 2000, Dr. Kosek wrote a letter to the state agency stating that plaintiff "suffered severe back pain . . . . He is undergoing therapy for this pain syndrome, and shown no signs of symptom magnification. He is disabled by this condition, and MRI evaluation confirms this to be a real injury." Tr. 380. Dr. Kosek also noted complaints of depression in his first exam with plaintiff. Tr. 386.

The ALJ only briefly mentions Dr. Kosek in her opinion, noting that "Drs. Kosek and Keiper prescribed physical therapy and administered facet blocks because no surgery was warranted." Tr.

25. Further, at the administrative hearing, the ALJ did not question Dr. Laurie about the differences between his opinion regarding plaintiff's ability to perform sedentary work and Dr. Kosek's opinion of disability. Rather, the only questions directed to Dr. Laurie about Dr. Kosek related to whether Dr. Laurie believed plaintiff was "doctor shopping" by getting prescriptions and treatment from Dr. Kosek and then returning to Dr. Laurie in 2002 for continuation of his methadone prescription. Dr. Laurie testified that he did not believe that was the case and that it was likely an insurance issue. Tr. 812. Dr. Laurie was also questioned about "drug seeking behavior." Dr. Laurie testified, "Oh, no. I think he's seeking the medications because he's in pain. No, he's been a good patient. Real good." Tr. 808.

      The Commissioner asserts that the ALJ's basis for rejecting Dr. Kosek's opinion can clearly be inferred from her decision, and that the ALJ gave more weight to Dr. Laurie's opinion, as plaintiff's treating physician. However, Dr. Kosek was also plaintiff's treating physician. In fact, plaintiff saw Dr. Kosek on a regular basis from April 2000 through 2002, and, as noted by the ALJ, plaintiff did not see Dr. Laurie consistently during this time period. As a treating physician during the relevant time period, the ALJ cannot disregard Kosek's opinion, even if contradicted by Dr. Laurie, without providing "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Further, the opinions of specialists are generally given more weight than those of non-specialists. 20 CFR § 416.927(d)(5); *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004). Dr. Kosek's treatment of plaintiff during the relevant time period is consistent with plaintiff's pain testimony and other evidence of record. Accordingly, the ALJ erred in failing to state specific and legitimate reasons for disregarding Dr. Kosek's opinions regarding plaintiff's limitations.

13 - OPINION AND ORDER

### B. Dr. Lechnyr

Dr. Lechnyr is a clinical medical psychologist who specializes in pain issues. On February 11, 2004, Dr. Lechnyr conducted a diagnostic examination of plaintiff after referral from the state agency. Tr. 616. Dr. Lechnyr's examination included review of medical records, diagnostic interviews, and psychological testing, including the MMPI-2 and a CARB test. Tr. 622-27. Dr. Lechnyr also completed a Mental Residual Capacity Function (MRCF). Dr. Lechnyr diagnosed plaintiff with a major depressive disorder and found psychological limitations on plaintiff's ability to complete a normal workday. Tr. 632. Further, Dr. Lechnyr noted plaintiff's limited learning, reading, and cognitive skills and opined that plaintiff could not perform the work required in a sedentary position. Tr. 629-30.

> The ALJ rejected the opinion of Dr. Lechnyr stating:
>
> Dr. Lechnyr has adopted all of the claimant's non-credible statements and has ignored or been unaware of the treating doctor's opinions that this claimant is not limited by mental illness, her [sic] reported pain not attributable to any medical condition and is not precluded from all work activity. Little weight is given to Dr. Lechnyr's opinion as he is not a treating source, his opinions are unsupported by the credible record as a whole, they are contrary to the opinions of treating doctors and they were obtained by counsel <u>after</u> the hearing in circumstances which diminish any appearance of objectivity.

Tr. 27. The treating physician referred to by the ALJ is Dr. Laurie, plaintiff's primary care physician, who prescribed anti-depressants for plaintiff. The Commissioner asserts that Dr. Laurie, as plaintiff's family physician, is competent to evaluate mental impairments and is entitled to greater weight than an examining specialist.

However, Dr. Lechnyr's opinion, as that of an examining doctor, if contradicted by another doctor, can only be rejected for specific and legitimate reasons based on substantial evidence in the

14 - OPINION AND ORDER

record. *Andrews v. Shalala*, 53 F. 3d 1035, 1043 (9th Cir. 1995). Contrary to the ALJ's findings, Dr. Lechnyr based his diagnosis on standard psychological testing rather than plaintiff's "non-credible statements." Dr. Laurie did not perform these tests, and no evidence of record suggests that Dr. Laurie performed a comprehensive psychological evaluation of plaintiff. Further, Dr Lechnyr was not paid by plaintiff but by the state agency, and the state agency agreed that Dr. Lechnyr was the appropriate examiner. Tr. 82. Further, Dr. Lechnyr's opinions are consistent with those of Dr. Kosek, plaintiff's treating physician during the relevant period. Therefore, I find that the ALJ failed to provide sufficient and legitimate reasons for rejecting Dr. Lechnyr's opinion and conclusions regarding plaintiff's limitations.

### IV. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman*, 211 F.3d at 1178. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989). Accordingly, improperly rejected evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292).

Here, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Kosek and Lechnyr and plaintiff's subjective pain allegations. Further, I find that no outstanding

issues must be resolved and that the ALJ would be required to find plaintiff disabled if these opinions and plaintiff's allegations were credited. Dr. Kosek's opinion and treatment of during this time period supports plaintiff's allegations of pain and disability, and Dr. Lechnyr's opined that plaintiff has a psychological inability to maintain attention and concentration, function in a normal work environment or complete a normal workday without an unreasonable number and length of rest periods. If the ALJ had properly credited this evidence, plaintiff's RFC would reflect an inability to work. At the administrative hearing, the VE testified that "even unskilled work would require you to sustain attention for up to two hours at a time with normal breaks and up to eight hours a day." Tr. 650. Therefore, remand for payment of benefits is appropriate.

## CONCLUSION

For the foregoing reasons, the ALJ's finding that plaintiff was not disabled under the Act is not supported by substantial evidence in the record. Accordingly, the Commissioner's decision is REVERSED and REMANDED for an award of benefits.

IT IS SO ORDERED.

DATED this __4__ day of April, 2006.


　　　　　　　　　　/s/ Ann Aiken
　　　　　　　　　　Ann Aiken
　　　　　　　　United States District Judge